UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT MORRIS,**<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>**CORRECTIONS CORPORATION OF AMERICA,**<br><br>　　　　　　Defendant. | Case No. 13-cv-00121 (CRC) |

## MEMORANDUM OPINION

Former inmate Robert Morris claims he suffered a burn to his groin from scalding water while showering at the Correctional Treatment Facility ("CTF") in Washington, D.C. He has brought suit against the prison's parent company, the Corrections Corporation of America ("CCA"), alleging that its negligent maintenance of the shower facility caused his injury. CCA moves for summary judgment, and Magistrate Judge Deborah A. Robinson, to whom the case was referred for pre-trial proceedings, has recommended granting CCA's motion. Because Morris has not offered evidence enabling a reasonable jury to find that the shower caused his injury or that the prison knew of a dangerous condition, the Court will adopt the Magistrate Judge's recommendation and grant summary judgment in favor of CCA.

### I.   Background

Robert Morris alleges that in September 2012 he suffered a burn to his scrotum when the water temperature in a prison shower spiked inexplicably. Pl. Ex. 2 Affidavit of Robert Morris ("Morris Aff.") ¶¶ 1–2. According to Morris, he leapt from the shower immediately after the water temperature changed and suffered no injuries to any other portion of his body. Def. Statement of Material Facts ("DSOF") Ex. 1 Deposition of Robert Morris ("Morris Depo.") at 40:1–5, 44:1–13. Dr. Andrew Catanzaro examined Morris soon after the alleged incident, writing that Morris

complained of "1 week of scrotal pain" and that the area had "red skin, no breakdown[, n]o induration, no burned skin on thighs." DSOF Ex. B at 1–2. Dr. Catanzaro diagnosed Morris with dermatitis and eczema due to exposure to chemical products and opined that the injury was "unlikely due to second degree burns." Id. Another doctor saw Morris three days later and diagnosed a "1st maybe 2nd degree scrotal burn" with redness and slight blistering. Pl. Ex. 3 at 4. A third doctor incorrectly recorded that Morris' initial diagnosis had been "second degree burns due to blistering of the skin." Id. at 5. Within a few weeks of first reporting the injury, Morris reported it had healed. Id. at 11. Morris submitted an informal complaint to CTF, alleging that he was burned by the shower and followed it with a formal grievance. Def. Ex. 6 Affidavit of J. Allen, CTF Facilities Grievance Coordinator ("Allen Aff.") Ex. A, B. After CTF denied both claims, Morris brought suit against CTF's parent company, CCA, in District of Columbia Superior Court. CCA removed the action to this Court, which referred it to Magistrate Judge Robinson for all matters excluding trial. CCA has now moved for summary judgment on Morris' sole count. Magistrate Judge Robinson recommends that CCA's motion be granted. Report and Recommendation, Oct. 29, 2014.

**II.     Standard of Review**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the evidence in the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When evaluating motions for summary judgment, "the court shall grant summary judgment only if . . . the moving part[y] is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." Select Specialty Hosp.–Bloomington, Inc. v. Sebelius, 774 F. Supp. 2d 332, 338 (D.D.C. 2011) (internal quotation marks and citation omitted). The court must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the

party opposing summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citation omitted). A genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. The nonmoving party may not rely solely on unsubstantiated allegations or conclusory statements. See Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).

**III.    Analysis**

Morris' complaint contains a single count of negligence. Negligence under District of Columbia law requires the plaintiff to prove: "(1) the defendant owed a duty [of care] to the plaintiff, (2) the defendant breached its duty, (3) and that breach was the proximate cause of (4) damages sustained by the plaintiff." Busby v. Capital One, N.A., 772 F. Supp. 2d 268, 283 (D.D.C. 2011) (citing Powell v. District of Columbia, 634 A.2d 403, 406 (D.C. 1993)). CCA contends that Morris has not offered any evidence of the standard of care governing CTF's duty to maintain its showers and that no reasonable jury could find that CTF was on notice of a dangerous condition or that the shower did in fact cause Morris' injuries.

A.    Standard of Care and Notice

To prove negligence, a plaintiff must prove the defendant breached a duty, such as by failing to properly maintain facilities or correct a known dangerous condition. E.g., Thomas v. Grand Hyatt Hotel, 749 F. Supp. 313, 314 (D.D.C. 1990), aff'd, 957 F.2d 912 (D.C. Cir. 1992). Under District of Columbia law, a plaintiff must provide expert testimony to establish that a prison's maintenance practices fell below the requisite standard of care, but need not do so if the facility is on notice of a specific dangerous condition. See, e.g., Cosio v. District of Columbia, 940 A.2d 1009, 1010 (D.C. 2008) ("While matters such as appropriate inspection and maintenance schedules for prison facilities would, indeed, require expert testimony to elucidate them, . . . [Plaintiff] alleged rather a failure to remove a hazard open and notorious, and which could be corrected or at least

warned against by the exercise of ordinary care."). Morris conceded that he failed to establish a general standard of care for maintaining shower facilities by not responding to this issue in his opposition to summary judgment and objections to the Magistrate Judge's report. See, e.g., Diggs v. Potter, 700 F. Supp. 2d 20, 42 (D.D.C. 2010) (court may treat an argument as conceded if opposing party fails to adequately respond). Thus, he can only establish breach if he offers sufficient evidence that CTF was on notice of a dangerous condition and failed to remedy it within a reasonable time. See, e.g., Hickey v. Washington Metro. Area Transit Auth., 360 F. Supp. 2d 60, 62 (D.D.C. 2004) (under D.C. law, "the defendant may be liable if it had actual or constructive notice of a dangerous condition, but failed to correct or remove the danger." (citations omitted)).

To demonstrate notice, Morris provides the affidavit of Karlton Hoke, another inmate at CTF, who attests to experiencing temperature increases while showering during the first two weeks of September 2012 and making a verbal complaint to an officer. Pl. Ex. 10 Supplemental Affidavit of Karlton Hoke ¶¶ 1–2. Although Morris also affirms that other inmates told him they had complained to staff, Morris Aff. ¶ 5, his statement is inadmissible hearsay and thus cannot be used to overcome summary judgment, see, e.g., Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (hearsay "'counts for nothing' on summary judgment" (quoting Gleklen v. Democratic Cong. Campaign Comm., 199 F.3d 1365, 1369 (D.C. Cir. 2000))).

To demonstrate lack of notice of a dangerous condition, CCA submits an affidavit by J. Allen, CTF's Facility Grievance Coordinator, who states that no inmate submitted a grievance regarding shower temperature before this occurrence. Allen Aff. ¶¶ 2–3, 7–8. J. Smith, CTF's Maintenance Supervisor, also states that he is unaware of any other inmate making complaints of injuries due to shower temperatures. Def. Ex. 7, Affidavit of J. Smith ("Smith Aff.") ¶ 9.

At best then, Morris only offers a single instance in which another prisoner may have reported erratic shower temperatures before his injury. But even if that were sufficient to establish

that CTF knew the showers' temperature varied, it does not demonstrate that CTF had reason to believe the issue was dangerous.  If the water temperature changed radically but never appeared to reach a temperature that could cause injury, then CTF was merely on notice of an inconvenience.

CCA has provided a collection of articles and safety guidelines, all of which set a maximum safe water temperature for faucets at 120 degrees Fahrenheit.  DSOF Ex. C (A.R. Moritz & F.C. Henriques Jr., Studies of Thermal Injury: The Relative Importance of Time and Surface Temperature in the Causation of Cutaneous Burns, Am. J. Pathol. 23(5):695, 71 (Sep. 1947)); id. Ex. D (U.S. Consumer Prod. Safety Comm'n, Avoiding Tap Water Scalds; compilation of publications on scalding by the American Burn Association).  Smith explains that CFT policy requires water temperature not exceed 120 degrees and that Smith performs monthly inspections of the water temperature at each housing facility.  Smith Aff. ¶¶ 2–5.  A contemporaneous shower water temperature log shows that none of CTF's showers had water temperature exceeding 120 degrees from July 2011 to January 2013.  Id. Ex. C.  Morris provides no evidence to contradict CCA's proffers.  Indeed, other than testimony of his own injury, Morris offers no evidence that CTF's showers ever reached temperatures above 120 degrees, and he acknowledges that no other inmate was injured by the showers.  Morris Depo. 148:16–149:18.  Accordingly, Morris has not offered evidence from which a reasonable jury could conclude that CTF was on notice of a dangerous condition.  He therefore has failed to establish breach.

      B.  Proof of Causation

To prevail on a negligence claim, a plaintiff also must prove that the defendant's breach caused his injury.  E.g., Busby, 772 F. Supp. 2d at 283.  Morris contends that he experienced a burning sensation in his groin when the water temperature suddenly increased and that he was later treated for injuries in that area of his body.  Morris Aff. ¶¶ 1–2.  His only other evidence is his attending physicians' notes, some of which indicate he had been burned.  Pl. Ex. 3.

CCA responds with the contemporaneous notes and an affidavit from Dr. Catanzaro, who first examined Morris. Consistent with his notes, Dr. Catanzaro affirms that he "did not observe any blistering or broken skin as would be consistent with a burn" and instead believed Morris's injury resulted from "chemical exposure, such as lotion." Def. Ex 3 Affidavit of Andrew Catanzaro ¶¶ 9–10; see also DSOF Ex. B at 1–2. CCA also has retained a noted expert in burn wounds, Dr. Daniel Martin Caruso. Def. Ex. 2 Affidavit of Daniel Martin Caruso ("Caruso Aff.") ¶¶ 2–7 & Ex. A. Reviewing a photograph showing that the shower nozzle is fixed to the upper-wall and provides only a wide stream of water, Def. Ex. 4 (photograph), Caruso reasons that it is "difficult to imagine that the water flow could be directed only to a very small area of the body" so as to have caused Morris' injury, Caruso Aff. ¶ 15. Dr. Caruso also posits that if the shower water temperature during the incident remained within the temperatures measured over the prior year, "there is no scientific way any burn injury could have occurred in the manner claimed by Mr. Morris." Id. ¶ 21. He explains that "[t]o cause deep thermal burns within only a few seconds of skin exposure, water must reach a temperature of approximately 150 degrees[,]" and, moreover, if Morris had suffered a burn within "mere seconds . . . then a deep partial thickness (2nd degree burn) or full-thickness (3rd degree burn) would be expected." Id. ¶ 23. Yet no such burns are indicated in Morris' medical records. Id.

CCA provides considerable evidence demonstrating that it is extremely unlikely that the shower caused Morris's injury, while Morris merely establishes that the shower is a possible cause. Even ignoring CCA's evidence and crediting Morris' own testimony, it would be just as likely that the shower temperature merely irritated a pre-existing injury. In fact, Morris told Dr. Catanzaro that he had experienced groin pain the week before showering. DSOF Ex. B at 1–2. Given CCA's extensive evidence to disprove causation, the limited probative value of Morris' evidence, and the general implausibility that Morris could burn only his scrotum while standing under a wide-angle

shower faucet, the Court concludes that no reasonable jury could find it more likely than not that the shower caused Morris' injury.

### IV.     Conclusion

For the foregoing reasons, the Court will adopt the recommendations of the Magistrate Judge and grant summary judgment for CCA.  The Court will issue an Order consistent with this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:     December 17, 2014